UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION AT KANSAS CITY

| | |
|---|---|
| TOKIO MARINE AMERICAN INSURANCE COMPANY, and MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, as subrogees of Toyota Motor Sales, U.S.A., Inc., and LIBERTY MUTUAL FIRE INSURANCE COMPANY, as subrogree of Haldex Brake Products Corporation, <br><br> Plaintiffs, <br><br> PROFESSIONAL SERVICE INDUSTRIES, INC., SCHEFERS ROOFING, CO., and HUNT PLUMBING CO., INC., <br><br> Defendants. | Case No. 4:18-cv-00931 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, TOKIO MARINE AMERICAN INSURANCE COMPANY ("TM America"), MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA ("MSIC America"), as subrogees of Toyota Motor Sales, U.S.A., Inc. ("Toyota"), and LIBERTY MUTUAL FIRE INSURANCE COMPANY ("Liberty Mutual") as subrogee of Haldex Brake Products Corporation ("Haldex"), alleged the following against Defendants, PROFESSIONAL SERVICE INDUSTRIES, INC. ("PSI"), SCHEFERS ROOFING, CO. ("Schefers Roofing"), and HUNT PLUMBING CO., INC. ("Hunt Plumbing"):

### THE PARTIES

1. TM America is an insurance company registered with and regulated by the Missouri Division of Insurance Company Regulation. TM America's principal place of business and nexus of operations are in the State of New York. At all times relevant hereto, TM America

1

provided insurance coverage for certain property owned by Toyota, as well as extra expenses associated with damage to said property. The coverage afforded by TM America included protection against damage to certain inventory and automobile parts owned by Toyota and stored at a warehouse space leased by Toyota located at 10711 Airworld Drive, Kansas City, Missouri.

2. MSIC America is an insurance company registered with and regulated by the Missouri Division of Insurance Company Regulation. MSIC America's principal place of business and nexus of operations are in the State of New York. At all times relevant hereto, MSIC America provided insurance coverage for certain property owned by Toyota, as well as extra expenses associated with damage to said property. The coverage afforded by MSIC America included protection against damage to certain inventory and automobile parts owned by Toyota and stored at a warehouse space leased by Toyota located at 10711 Airworld Drive, Kansas City, Missouri.

3. Liberty Mutual is an insurance company registered in the State of Missouri, with a principal place of business and nexus of operations in the State of Massachusetts. At all times relevant hereto, Liberty Mutual provided insurance coverage for certain property owned by Haldex. The coverage afforded by Liberty Mutual included protection against damage to certain inventory owned by Haldex and stored at a warehouse space leased by Haldex located at 10709-10715 Airworld Drive, Kansas City, Missouri.

4. PSI is a Delaware corporation with its principal place of business and nexus of operations in the State of Illinois. PSI maintains an office in St. Louis, MO. At all times relevant hereto, PSI served as the engineering and design consultant for the design and construction of a new roofing system (the "Roofing Project") at the warehouse properties located at 10709, 10711, and 10715 Airworld Drive, Kansas City, Missouri (the "Loss Site").

5. Schefers Roofing is a Missouri corporation with its principal place of business and nexus of operations in Grain Valley, MO. Schefers Roofing holds itself out as a commercial roofing specialist. At all times relevant hereto, Schefers Roofing served as the contractor responsible for implementing the Roofing Project engineered and designed by PSI at the Loss Site.

6. Hunt Plumbing is a Missouri corporation with its principal place of business and nexus of operations in Birmingham, MO. Hunt Plumbing holds itself out as a residential and commercial plumber. At all times relevant hereto, Hunt Plumbing served as the plumbing contractor responsible for implementing the drainage associated with the Roofing Project engineered and designed by PSI and installed by Schefers Roofing at the Loss Site.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) (1) as the amount in controversy for each Plaintiff exceeds $75,000.00 and the Plaintiffs and Defendants are citizens of different States.

8. Venue is proper in this District and Division as the events giving rise to this litigation occurred in Kansas City, Missouri.

## GENERAL ALLEGATIONS

9. Upon information and belief, prior to May 1, 2017, Cobalt Industrial REIT ("Cobalt"), Toyota and Haldex's landlord for the Loss Site, or an agent or affiliate of Cobalt, contracted with PSI to engineer, design, and supervise the construction and installation of a new roofing system at the Loss Site (the "Roof Project").

10. Upon information and belief, prior to May 1, 2017, Cobalt, or its agent or affiliate, contracted with Schefers Roofing to construct and install the roofing system engineered and designed by PSI at the Loss Site.

11. Upon information and belief, prior to May 1, 2017, either Cobalt, or its agent or affiliate; PSI; or Schefers Roofing contracted with Hunt Plumbing to construct and implement the drainage components of the roofing system engineered and designed by PSI at the Loss Site.

12. On May 18, 2017 (the "First Date of Loss"), the roofing system engineered and designed by PSI, constructed and installed by Schefers Roofing and PSI failed, resulting in a collapse of the roof at the Loss Site.

13. The collapse of the roof at the Loss Site resulted in the intrusion of significant water into the warehouse spaces leased to Toyota and Haldex.

14. The collapse of the roof also resulted in the fracture of wet-pipe fire sprinkler lines inside the Loss Site, which led to the introduction of additional water into Toyota and Haldex's lease spaces.

15. The roof collapse on the First Date of Loss caused damage to certain inventory and other personal property owned by Toyota and Haldex that they stored at the Loss Site pursuant to their separate leases with Cobalt.

16. On or about June 15, 2017 (the "Second Date of Loss"), an additional portion of the roof of the Loss Site collapsed. The portion of the roof that collapsed on the Second Date of Loss was also a part of the Roof Project.

17. Due to the further roof collapse on the Second Date of Loss, Toyota and Haldex sustained additional damage to other inventory and property they owned that was stored at the Loss Site.

18. Toyota and Haldex both sustained additional losses as a result of the roof collapses, including but not limited to, additional storage costs associated with arranging for alternate storage of undamaged property.

19. Following the First and Second Dates of Loss, Toyota submitted a first-party insurance claim to TM America and MSIC America. TM America and MSIC America issued payments to Toyota for some, but not all, of the losses it sustained as a result of the two roof collapses described herein. Toyota has assigned its rights to pursue recovery of all losses incurred as a result of the two roof collapses to TM America and MSIC America.

20. Following the First and Second Dates of Loss, Haldex submitted a first-party insurance claim to Liberty Mutual. Liberty Mutual issued payments to Haldex for some, but not all, of the losses it sustained as a result of the two roof collapses described herein. Haldex has assigned its rights to pursue recovery of all losses incurred as a result of the two roof collapses to Liberty Mutual.

## **COUNT I – NEGLIGENCE**
## **(PSI, Only)**

21. Plaintiffs hereby re-allege and incorporation by reference paragraphs 1 through 20 as if fully stated herein.

22. At all pertinent times, PSI owed Toyota and Haldex duties to design, engineer, and supervise the installation and construction of the roof at the Loss Site, which collapsed giving rise to this litigation, in accordance with all applicable industry standards, building codes, and any other standards applicable to PSI's scope of work relative to the Roof Project.

23. PSI breached its duties described above through the following acts or omissions including, but not limited to:

5

a. designing a flute-filled roof system, but utilizing the pre-existing standing seam metal roof as a structural deck, thereby using the pre-existing metal roof in manner for which it was never intended;

b. altering the original drainage from a uniform, even trough drainage system to a concentrated, point load drainage system, which increased the load pressures placed upon the roof structure at the drain points and exceeded the load capacity limit of the pre-existing roof structure PSI utilized as the structural deck for the new roof it designed and engineered;

c. the roof sagged because PSI's design allowed for loads that exceeded the roof's load capacity, the sagging lowered the surface of the roof below the drains, thereby decreasing the drainage capacity of the overall roofing system;

d. PSI reduced the number of roof drains from its original design to the ultimate as-built condition of the roof that collapsed;

e. PSI design called for spacing of four feet between purlins, but PSI permitted at least five feet of space between the purlins when the roof that collapsed was constructed;

f. failing to perform its work in a skillful, prudent, and workmanlike manner;

g. failing to design the roof in accordance with all applicable industry standards, building codes, and the general standard of care applicable to PSI's scope of work for the Roof Project;

h. failing to ensure the structural capacity of the roof was sufficient for the loads PSI designed it to handle;

i. failing to use due care and safety in the design of the roof;

j. failing to supervise the construction and installation of the roof it designed in such a manner as to ensure the as-built condition matched its engineering design and specifications;

k. failing to recognize the likelihood and seriousness of damage related to its actions;

l. failing to take all necessary and reasonable precautions to prevent the loss and damage to the Toyota and Haldex's property;

m. any other acts and omissions that may become known during the course of discovery.

24. PSI's breaches directly and proximately caused the roof collapse and the resulting damages described herein.

25. As a result of the roof collapse, Toyota made a first-party insurance claim to TM American and MSIC America and, under the terms of their policies, TM American and MSIC America issued payments to Toyota for some, but not all of the damages Toyota suffered as a result of the roof collapse. Toyota subsequently assigned all rights of recovery to TM America and MSIC America.

26. As a result of the roof collapse, Haldex made a first-party insurance claim to Liberty Mutual, and under the terms of its policy, Liberty issued payments to Haldex for some, but not all of the damages Haldex suffered as a result of the roof collapse. Haldex subsequently assigned all rights of recovery to Liberty Mutual.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor against PSI in an amount to be determined at trial, including costs, interest, attorney fees, and such other relief as this Court deems proper and just.

## COUNT II – NEGLIGENCE
### (Schefers Roofing, Only)

27. Plaintiffs hereby re-allege and incorporation by reference paragraphs 1 through 26 as if fully stated herein.

28. At all pertinent times, Schefers Roofing owed Toyota and Haldex duties to install and construct the roof at the Loss Site, which collapsed giving rise to this litigation, in accordance with all applicable industry standards, building codes, and any other standards applicable to Schefers Roofing's scope of work relative to the Roof Project.

29. Schefers Roofing breached its duties described above through the following acts or omissions including, but not limited to:

   a. installing roof crickets that were far too narrow to allow for adequate and proper roof drainage;

   b. failing to install and construct the roof in accordance with all applicable industry standards, building codes, and any other standards applicable to its scope of work relative to the Roof Project;

   c. failing to follow PSI's engineering design and specifications for the roof;

   d. failing to properly install the drains on the roof;

   e. failing to properly supervise its subcontractors to ensure that all roof drains were properly installed;

   f. failing to ensure the roof drainage system and plumbing system on the roof was adequate to prevent an unsafe accumulation of water;

   g. failing to recognize the likelihood and seriousness of damage related to its actions;

      h. failing to take all necessary and reasonable precautions to prevent the loss and damage to Toyota and Haldex's property; and

      i. any other acts and omissions that may become known during the course of discovery.

30. Schefers Roofing's breaches directly and proximately caused the roof collapse and the resulting damages described herein.

31. As a result of the roof collapse, Toyota made a first-party insurance claim to TM American and MSIC America and, under the terms of their policies, TM American and MSIC America issued payments to Toyota for some, but not all of the damages Toyota suffered as a result of the roof collapse. Toyota subsequently assigned all rights of recovery to TM America and MSIC America.

32. As a result of the roof collapse, Haldex made a first-party insurance claim to Liberty Mutual, and under the terms of its policy, Liberty issued payments to Haldex for some, but not all of the damages Haldex suffered as a result of the roof collapse. Haldex subsequently assigned all rights of recovery to Liberty Mutual.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor against Schefers Roofing in an amount to be determined at trial, including costs, interest, attorney fees, and such other relief as this Court deems proper and just.

## COUNT III – NEGLIGENCE
### (Hunt Plumbing, Only)

33. Plaintiffs hereby re-allege and incorporation by reference paragraphs 1 through 32 as if fully stated herein.

34. At all pertinent times, Hunt Plumbing owed Toyota and Haldex duties to install and construct the drainage for the roof at the Loss Site, which collapsed giving rise to this

litigation, in accordance with all applicable industry standards, building codes, and any other standards applicable to Hunt Plumbing's scope of work relative to the Roof Project.

35. Hunt Plumbing breached its duties described above through the following acts or omissions including, but not limited to:

   a. tying each of the eight drains it installed into the same downspout, thereby limiting the drainage capacity of the roof from that designed by PSI;

   b. installing overflow drains that were of insufficient capacity;

   c. spacing out the overflow drains in excess of the spacing called for in PSI's design and specifications;

   d. failing to properly install the drains on the roof;

   e. failing to install and construct the roof drainage in accordance with all applicable industry standards, building codes, and any other standards applicable to its scope of work relative to the Roof Project;

   f. failing to follow PSI's engineering design and specifications for the roof;

   g. failing to ensure the roof drainage system and plumbing system on the roof was adequate to prevent an unsafe accumulation of water;

   h. failing to recognize the likelihood and seriousness of damage related to its actions;

   i. failing to take all necessary and reasonable precautions to prevent the loss and damage to Toyota and Haldex's property; and

   j. any other acts and omissions that may become known during the course of discovery.

10

36. Hunt Plumbing's breaches directly and proximately caused the roof collapse and the resulting damages described herein.

37. As a result of the roof collapse, Toyota made a first-party insurance claim to TM American and MSIC America and, under the terms of their policies, TM American and MSIC America issued payments to Toyota for some, but not all of the damages Toyota suffered as a result of the roof collapse. Toyota subsequently assigned all rights of recovery to TM America and MSIC America.

38. As a result of the roof collapse, Haldex made a first-party insurance claim to Liberty Mutual, and under the terms of its policy, Liberty issued payments to Haldex for some, but not all of the damages Haldex suffered as a result of the roof collapse. Haldex subsequently assigned all rights of recovery to Liberty Mutual.

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment in their favor against Hunt Plumbing in an amount to be determined at trial, including costs, interest, attorney fees, and such other relief as this Court deems proper and just.

Respectfully submitted,

*/s/ Paul S. Penticuff*
Paul S. Penticuff, Esq.     MO # 41847
Baker Sterchi Cowden & Rice, LLC
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108
Telephone    816.471.2121
Facsimile    816.472.0288
Email    penticuff@bscr-law.com
**ATTORNEY FOR PLAINTIFFS**